U.S. v. Shields Mr. Sandberg Good morning, Your Honors, Craig Sandberg on behalf of the defendant, Ernest Shields. May it please the court, counsel. Obviously, in this brief, we've got a whole host of issues. I think there were seven total that was raised, some of them certainly were regarded as stronger than others. I think there were one word short of the maximum. So obviously, I've got to temper my argument for the court here, and I think there's a couple that I really want to highlight here. The first being the applicability of Brady v. Maryland to a suppression hearing and or a motion to suppress. In this particular case, as I include in my brief, the credibility of the officer who had the gun, whether or not he possessed a gun, all that was related to and directly related to this officer's credibility. At some point in time during the course of the proceedings, Counsel for Mr. Shields and maybe Mr. Shields independently had ascertained, and this was certainly after the suppression hearing, that this officer had been the subject of a civil rights claim alleging, among other things, a conspiracy among other fellow police officers to suppress evidence or plant evidence. Obviously, that type of evidence, if it is used for purposes of impeachment, whether it be a trial or a motion to suppress, is the exact type of evidence that affects the credibility and Mr. Shields' defense. That's impeaching evidence directly related to Officer Craig Congolese. There were two officers that discovered the gun, were there not? What's that? There were two officers involved in the spotting? I think the facts are a little bit more nuanced than that. Officer Congolese is the one who chased Mr. Shields down the alley. Officer Congolese is the individual who ostensibly says that he saw Mr. Shields with a gun. He observed that Mr. Shields never tossed the gun, that although his officer said that had he seen the flash of the gun, he likely would have shot Mr. Shields. Officer Congolese is the one who testified that he bravely soldiered on chasing this and then when he lifted Mr. Shields from the ground, and that I believe was in proximity to when Officer Buckler arrived on scene, that's when the gun was seen by both officers. However, if a finder of fact, be it at the suppression hearing, the judge or a jury were to hear that this same officer had been alleged to have been part of a conspiracy, that's absolute impeaching. If the only thing that matters as far as the elemental things, obviously there was a gun. The only thing that mattered for purposes of what that officer was testifying to was whether or not Shields was in possession of that gun. Well, it was just happening to be lying there before or he brought it with him or what? Well, as this court has seen, it would not be an impossibility for an officer to have planted evidence. And I think that this court has addressed at other times. Yeah, if you knew who you were going after and what the ultimate offense might be for planting the weapon, I can understand that. Well, I don't know whether an officer Congolese may have carried that. That's certainly something that could be argued. However, without that type of evidence regarding what was the IPRA files, what were the CRs, all this stuff that the government had available to it to subpoena and should have been turned over to Shields' counsel wasn't available. And it's a... He admitted... Who admitted? ...having the gun. Well... I don't think you can argue that it was planted and then it had... I think what you're referring to is Shields... ...the defendant admitting under interrogation that he should have planted the gun. What you're referring to is Shields didn't testify at trial. Officer Congolese, again, the subject officer, he says that Shields said, I shouldn't have had the gun. Now, again, in the context of either a trial or the suppression hearing, and I want to deal most specifically with the suppression for purposes of talking about Brady, the fact that that officer's credibility is at issue on the impeachment, whether it be as to the finding of the gun with the history of allegedly planting the gun, his credibility may have been tossed out the window as it relates to the statement of... Right. But you're also making a Second Amendment claim here, saying he had a right to have the gun. Obviously, these are alternative theories, and I, as a point of counsel for Mr. Shields, I need to raise... One's a little stronger than the other. I certainly understand that, Your Honors, and that's why I'm talking about Brady in the context of this question. So we'll just suspend our disbelief here for the Second Amendment claim. Well, the Second Amendment claim is... I mean, we've already said that found in possession is constitutional, that the 922G offense is constitutional, and that's the Williams case, which you haven't grappled with in your briefing of this issue. I'm not sure how you get around it. I'm sorry, the Williams case in relation to which? The Second Amendment claim. I understand, and the arguments that were advanced on appeal are similar to what Mr. Shields, counsel, attempted to advance before the trial court. If you want me to talk about the Second Amendment stuff, I'd be happy to address anything you wish. Otherwise, if I could... It's up to you how you want to use your argument. I would like to use my argument to address a couple other things, unless this panel has any more questions related to this question. It's probably well decided by you just now. Okay. As to the other part, we've got kind of two sections related to insufficiency of the evidence, as well as whether or not Alamanderes-Torres is no longer effective law in light of the lane. In this particular case, the evidence that the government had to submit to the jury and have proven beyond a reasonable doubt is both the fact of the gun having traveled through interstate commerce, and I think that there was evidence that was put in by the government from an officer testifying to that nature. The other is the possession aspect, and the third is the felony, the prior felonies. In this particular case, what was submitted to the jury was a stipulation signed by counsel for Mr. Shields from the government that he had one prior felony. What the cases have suggested now is that when, as in the ACCA matter, a mandatory minimum of 15 years is to be sought, that that is an element that must be presented to the jury and have proven beyond a reasonable doubt. Now, to the extent that the government would be able to do that easily or not, that doesn't really matter for the purpose of my argument, because the argument is that that was a necessary prerequisite before a jury could find and Mr. Shields be sentenced to a mandatory 15 years. What are the elements of the offense, then? Well, the elements of being a felon in possession where the government is seeking mandatory 15 years under the ACCA. Well, but that's on the sentencing side. Well, under the indictment alleges both the 922 and 924E1, making the indictment read that they are seeking and intend to prove that he was a felon, a three-time, at least three-time felon in possession of a weapon when he shouldn't have. Right. This is just the Almendarez-Torres case, which has not been overruled by the Supreme Court. Your argument basically asks us to overrule it. Well, in part, certainly, Your Honor, what I'm suggesting is that it's no longer the applicable law. In the Allain case, that was not challenged. Right. You can take this argument to the Supreme Court, but we can't disregard Almendarez-Torres. It's still on the books. So it's preserved for further review. Certainly. I understand. And then finally, with the limited amount of time I want to talk about, the issue of whether or not the government, its burden of showing that the three prior convictions that it intended to use in order to get and obtain the 15-year mandatory minimum was met at sentencing. Mr. Shields, unfortunately, was representing himself. He was pro se. Obviously, if the court has already read the sentencing transcript, you can see that his thoughts were certainly not as clear as perhaps an advocate may have been in asserting and ascertaining why they're talking about something and the import of those thoughts. However, at the sentencing, he let the court know and he let the government know that he believed that two of his prior convictions that the government was using in order to enhance that sentence and have it as a mandatory minimum of 15 years had been relieved. And instead of halting the hearing at that point in time, having heard that whether by the government's request or by the courts, in order to, in fact, ascertain whether that's true or not true, the sentencing court then moved along, disregarded that as having been... There was never any evidence to that submitted to the court, was there? I certainly understand beyond Mr. Shields' statement to the court, there wasn't any. But it wouldn't have taken anything to simply hold that sentencing in abeyance to allow Mr. Shields to develop what is obviously a big deal in this particular case Well, there's no legal requirement that the court do that on its own initiative. It's the defense burden to demonstrate that civil rights have been restored in order to eliminate a prior conviction from being counted under the hearing. I understand that as a rule, that's generally the case. However, the fact that this was set for sentencing and this was raised didn't compel the district court to move it along and sentence him that day. Well, no, there's no rule either way, but we would hardly say that the court on its own, sua sponte, was required to adjourn to let the defendant attempt to flesh out that claim. In this particular case, that's a giant difference between a statutory maximum of 10 years and a mandatory minimum of 15 years. And so although it wasn't as fully developed as I'm sure this court, certainly me as counsel would have preferred, it certainly gives the type of scenario that a district court should get paused to allow him to... Was that an Illinois conviction? They were. Both of them were Illinois convictions, Your Honor. I can't remember. This is just an aside. Something strikes me about excluding weapons possession from the rest of the... I'm sorry, I don't know. Excluding weapons possession from the general release that's given. I don't know what the release that was given was. I'm just saying that's an aside. It's not...never mind. Right. I think probably one of the last things would be in the context of the... Mr. Shields had a number of attorneys that had represented him at various points during the district court proceedings, and unfortunately trial counsel was given this case shortly before and did a yeoman's job of putting together a whole host of motions that she deemed necessary to raise before the court. There were statements shortly before the trial that a short continuance was requested. I think under the circumstances there the court abused its discretion in persevering forward. Again, as far as the development of the district court record, we don't know who these witnesses were specifically. However, given the context and the information that we know, it may have been reasonable that she was going to have the individual who had brought the civil rights claims against Officer Congolese. Not having received any Brady materials, what I consider Brady materials from the government in this particular case, that would have been a reasonable thing for her to have done to challenge the veracity, the truthfulness, and to seek to impeach Officer Congolese. Given the totality of everything that was then before the district court, I think it abused its discretion in insisting that even a short continuance wasn't going to be permitted. I think the rest of the matters are contained in my brief, and I'm happy to stand on those unless the court has any more questions. I'll reserve the remainder of my time. Thank you, Your Honor. Thank you, Your Honor. Mr. Yadin. Good morning, Your Honors. May it please the court. Ken Yadin, United States. Your Honors, with respect to the Brady issue raised by counsel, this argument specifically regarding the suppression was not raised until the defendant filed his reply brief. It was not explored at all in the opening brief. Which argument are you saying? The Brady issue. The Brady issue was not explored at all in the opening brief by the defendant. Excuse me, the Brady issue was explored, but not with respect to the suppression hearing. So it's our position that that argument is forfeit, and to the extent that argument should be considered, this is not the case to do it. The argument was forfeit as well as there is no Brady issue here. The defendant was aware of this lawsuit, which was publicly available, and he made it clear during a sentencing hearing that he knew of the argument. Counsel, in his argument before the court, suggests that the lawsuit was not known until sentencing or at least sometime during trial. There's actually no evidence in the record as to exactly when counsel, at the trial level, learned of this lawsuit, although it's clear that from the defendant's statements before Judge Castillo at the sentencing, that they were aware of it at trial. So it's our position that there is no Brady issue here for those reasons. With respect to the Almanaz-Torres issue, as this court discussed in its Zuniga decision from September of this year, the law remains that a prior conviction for the purpose of sentencing can be decided by the sentencing judge. And finally, with respect to the Buckmeyer issue, the restoration of rights issue raised by counsel in his argument, this, again, was not a developed argument. It was simply tossed out as part of several things at the end of the sentence hearing by the defendant. The defendant didn't provide any evidence to support his claim. He didn't provide which restorations of rights letter, if any, he did receive, or even really a specimen copy. He did say that he did allege that he received a letter in 2003. Well, this court considers restoration of rights letters on a case-by-case basis, and that would have, according to PSR, would have likely have applied to his state possession of a firearm in a vehicle conviction. We've had a number. I mean, restoration of rights is not new in this regard. And the question I was trying to articulate to your opposing counsel was whether or not when restoration of rights exists, does Illinois routinely, or do you know, routinely exclude weapons possession from the restoration of rights? I do not know, Your Honor. I think it depends on what the letter itself says. I was trying to think of what the trial judge might have been aware of. Well, there was no letter presented, so we don't know what the trial judge was. It's immaterial. Your Honor, finally, with respect to the continuance issue, the defendant had had six attorneys, and when the trial counsel was brought on, I believe it was at least 30, perhaps more than 30 days, closer to 60 days before trial, the trial attorney at that time had adequate time to prepare motions, and as Judge Castillo made clear to counsel, based on the motions that had been filed, he was unlikely to change his mind. So it's our position that he did not abuse discretion, in fact, acted reasonably. And for those reasons, the government asks that this court affirm the sentence as well as the conviction. There are no further questions. Thank you, counsel. Thank you. Mr. Sandberg, how much time? How much time does Mr. Sandberg have? The first thing is that they are the government is absolutely wrong in the context of whether or not there's Brady material here. The type of evidence that would have been, should have been, must have been torn over to the defendant and his counsel is exactly the type of impeachment evidence, whether it ends up being only this civil case, which I highly doubt. As a practitioner that files plaintiff civil rights cases, I'm quite familiar with a whole host of underlying information that always exists whenever there's a case, be it CRs, be it anything from IPRA or OPS. So I believe it's somewhat disingenuous to suggest that that civil rights case is the only thing that matters here. That's just not the case. Again, I believe that it's important for this court to let the practitioners know that Brady applies to suppression hearings. That's been the trend across the country. There isn't anything specific here in this circuit indicating that otherwise. I believe that Brady applies at suppression trial. I believe that the material that should have been turned over would have affected the outcome. It certainly goes to his defense, his ability to put on a defense, and perhaps the conviction. And so I think that the case needs to be, the sentence and conviction need to be overturned and sent back. And that's all the time I have. Well, you have anything else you want to add? I'll give you a little bit more time. I think that that's it. Thank you, Your Honors. Any more questions? I don't believe so. All right. Thank you. Thank you, Mr. Sandberg. And you took this case by appointment, did you? I did. Again, you have the thanks of the court for your vigorous representation of your client. Thank you very much. Thanks to both counsel. The case is taken under advisement.